IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUZENIA K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. 3:19-cv-01006-BT |
| ANDREW SAUL, | § | |
| Commissioner of the | § | |
| Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Luzenia K.[1] filed a civil action seeking judicial review pursuant to 42 U.S.C. § 405(g) of a final adverse decision by the Commissioner of Social Security. For the reasons explained below, the Commissioner's decision is AFFIRMED in all respects.

### **Background**

Plaintiff alleges that she is disabled due to several physical and mental impairments, including a ruptured disc in her neck; injured lower back, knee, and shoulder; chronic pulmonary edema; diabetes; fluid in her lungs; neuropathy; depression; and anxiety. Pl.'s Br. 3-9 (ECF No. 15); Administrative Record 299-300, 318 (A.R.) (ECF No. 11-1). She alleges disability beginning March 10, 2010.

---

[1] The Court uses only Plaintiff's first name and last initial as instructed by the May 1, 2018 Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Pl.'s Br. 2; A.R. 297. After an initial administrative hearing decision dated September 9, 2013 denying Plaintiff benefits, the Appeals Council remanded her case to the administrative law judge (ALJ) for further consideration. A.R. 586. Following the second administrative hearing decision dated January 15, 2016 denying benefits, the Appeals Council remanded Plaintiff's case again for further consideration (the "Second Remand Order"). *Id.* at 617-18. Her applications for supplemental security income and disability insurance benefits were denied for a third time, and the Appeals Council declined review. *Id.* at 287. Plaintiff's most recent administrative hearing took place in Dallas, Texas, on November 6, 2017. *Id.* at 286. At the time of the hearing, Plaintiff was 56 years old. *See id.* at 298. She has a high school education, can communicate in English, *id.*, and has past work experience as a customer service representative and a mailroom supervisor, *id.* at 330.

The ALJ issued his written decision on May 1, 2018. *Id.* at 114. The ALJ found that Plaintiff was not disabled and, therefore, not entitled to supplemental security income or disability insurance benefits. *Id.* At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity

---

[2] "In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The claimant bears the initial burden of establishing a disability through the first four steps of

since March 10, 2010. A.R. 104. At steps two and three, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical and lumbar spine and disorder of the right shoulder, right knee, and right hip; nonetheless, the ALJ found that her impairments, or combination of impairments, did not meet or equal the severity of any listed impairment in the social security regulations. *Id.* at 104, 106. At step four, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, except that she can "stand and/or walk for up to [two] hours total per [eight]-hour workday," "cannot [c]limb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs," "can occasionally balance, stoop, kneel, and crouch," and "can perform only occasional overhead reaching with the dominant upper extremity." *Id.* at 107. At step five, relying on the testimony of a vocational expert (VE), the ALJ found that Plaintiff could perform her past relevant work as a customer service representative. *Id.* at 113.

As stated above, the Appeals Council declined to review the May 1, 2018 administrative decision. *Id.* at 1. Plaintiff then filed this action in federal district court on April 26, 2019, arguing: (1) the ALJ committed a *Stone* error, which has prejudiced Plaintiff; (2) the ALJ committed error by failing to consider the factors

---

the analysis; at the fifth step, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler,* 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

set forth in 20 C.F.R. §§ 404.1527 and 416.927 before declining to give weight to the opinion of Plaintiff's treating physician; (3) the ALJ erred by making an implicit determination that Plaintiff's noncompliance with prescribed medical treatment precluded a finding of disability; (4) the ALJ did not comply with the Second Remand Order; and (5) the ALJ committed a *Ripley* error and the RFC is consequently not supported by substantial evidence.

## Legal Standards

Judicial "review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland*, 771 F.3d at 923 (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citation omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted); *see also Copeland*, 771 F.3d at 923 ("Substantial evidence is 'more than a mere scintilla and less than a preponderance.'") (quoting *Perez*, 415 F.3d at 461). The Commissioner, and not the courts, resolves conflicts in the evidence; thereafter, the Court may not "reweigh the evidence or try the issues de novo." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (per curiam) (citing *Cook v. Heckler,* 750 F.2d 391, 392-93 (5th Cir. 1985); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam)). Accordingly, the

Court may not substitute its own judgment for the Commissioner's, and it may affirm only on the grounds that the Commissioner stated to support his or her decision. *Copeland*, 771 F.3d at 923 (citing *Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002) (per curiam)).

## Analysis

As a preliminary matter, the Court notes that the May 1, 2018 administrative decision is the third in a series of decisions denying Plaintiff benefits. While none of Plaintiff's arguments rely entirely on any prior hearing decision or remand order besides the Second Remand Order, Plaintiff points out and discusses findings by prior ALJs who heard this matter and directives from the first remand order. But this matter is on appeal from the adverse decision dated May 1, 2018 and the Appeals Council's denial of review dated April 16, 2019. It is not the province of this Court to consider any hearing decision other than the May 1, 2018 decision. 42 U.S.C. § 405(g) (providing for judicial review of a *final decision* of the Commissioner); *See also Weeks v. Soc. Sec. Admin. Comm'r*, 230 F.3d 6, 7 (1st Cir. 2000) (per curiam) (holding that an Appeals Council's remand for further consideration is not a final decision of the Commissioner); *Culbertson v. Shalala*, 30 F.3d 934, 937 n.3 (8th Cir. 1994) (same); *Duda v. Sec'y of Health & Human Servs.*, 834 F.2d 554, 555 (6th Cir. 1987) (per curiam) (same). To the extent it is error for an ALJ to ignore a mandate of the Appeals Council, the Court will consider whether, in rendering the May 1, 2018 decision, the ALJ complied with the mandates found in the Second Remand Order only.

I. The ALJ committed a *Stone* error, but the error is harmless.

Plaintiff first argues the ALJ failed to apply the appropriate legal standard in deciding whether Plaintiff's impairments were "severe" at step two of the analysis. Specifically, Plaintiff contends that the ALJ did not cite or otherwise set forth the *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) definition of "severe." The Court agrees; the ALJ applied the incorrect legal standard at step two of the sequential evaluation, but because the error is harmless, remand is not required.

Under *Stone*, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Stone*, 752 F.2d at 1101 (citations and alterations omitted). In fact, *Stone* requires a finding of "severe" if the impairment interferes with an individual's ability to work *at all. Stephanie Z. v. Berryhill*, 2018 WL 4467470, at *3 (N.D. Tex. Sept. 18, 2018) (citing *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805-06 (N.D. Tex. 2009); *Morris v. Astrue*, 2012 WL 4468185, at *5 (N.D. Tex. Sept. 4, 2012), *adopted by* 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012)). In the Fifth Circuit, a court assumes that the ALJ applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to *Stone* or by an express statement that ALJ used the construction the Fifth Circuit gives to the severity requirement. *Stone*, 752 F.2d at 1106. Nevertheless, "[a] case will not be remanded simply because the ALJ did not use 'magic words.'" *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Remand is only required "where there is no indication the ALJ applied the correct

6

standard." *Id.* The Commissioner may overcome the presumption that the ALJ applied an incorrect severity standard by showing that, though not explicitly stated, the ALJ applied the correct legal standard or by demonstrating that the ALJ's application of an improper standard was harmless. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (per curiam) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)).

Here, the ALJ did not cite *Stone*, and his articulation of the severity standard is inconsistent with *Stone*. Indeed, the ALJ defines severe impairments as "medically determinable impairments that significantly limit the claimant's ability to perform basic work activities." A.R. 104 (citing SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)). *Stone* disapproved of this very articulation of the severity standard. *Stone*, 752 F.2d at 1104-05 & n.3; *Mattie D. C. v. Berryhill*, 2019 WL 1084185, at *3 (N.D. Tex. Feb. 13, 2019), *adopted by* 2019 WL 1077372 (N.D. Tex. Mar. 7, 2019). Consequently, the Court assumes the ALJ applied an incorrect legal standard at step two. Remand is not required, however, because the error is harmless.

The Commissioner contends that the ALJ's application of the incorrect severity standard is harmless because the ALJ did not deny benefits at step two, but instead proceeded through the remainder of the sequential evaluation process. Resp. 3. "[T]he Fifth Circuit has held that [a] *Stone* error does not mandate automatic reversal and remand, and application of harmless error analysis is appropriate, in cases where the ALJ proceeds past step two of the sequential

evaluation process." *Hitchcock v. Berryhill*, 2019 WL 1128866, at *7 (N.D. Tex. Mar. 12, 2019) (citing *Taylor*, 706 F.3d at 603); *see also Gibbons v. Colvin*, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013 ) (finding *Stone* error harmless where the ALJ considered the effects of the claimant's impairments, including those that were not severe, on his ability to work); *Goodman v. Comm'r of Soc. Sec. Admin.*, 2012 WL 4473136, at *10 (N.D. Tex. Sept. 10, 2012) (same), *adopted by* 2012 WL 4479253 (N.D. Tex. Sept. 28, 2012). But here, the ALJ proceeded beyond step two and evaluated Plaintiff's impairments' impact on her ability to work *only* with respect to the impairments he found severe. That the ALJ moved beyond step two to the remainder of the sequential evaluation does not render the *Stone* error harmless in this case. Rather, the Court concludes the error is harmless for the reasons that follow.

Plaintiff contends that the ALJ should have found the following impairments severe: (1) "depression, dizziness, forgetfulness, headache, loss of sleep, loss of weight, nervousness, numbness in right leg, left shin, right hand, frequent urination"; (2) morbid obesity; (3) diabetes; and (4) chronic kidney disease. Pl.'s Br. 15.  Plaintiff argues remand is required because medical records establish that Plaintiff suffered from each of these impairments and Plaintiff testified that she experiences them.

First, Plaintiff claims that the ALJ's severity determination "implicitly reject[ed] the opinion of Stella Nwankwo, MD, an examining SAMC, that [Plaintiff] suffers from depression, dizziness, forgetfulness, headache, loss of sleep, loss of

weight, nervousness, numbness in right leg, left shin, right hand, [and] frequent urination[.]" Pl.'s Br. 16. The ALJ is not required to cite and discuss every symptom reflected in the medical records. *See Smith v. Astrue*, 2008 WL 5251782, at \*4 (W.D. Miss. Dec. 17, 2008) (citing *Flors v. Massanari*, 2002 WL 100631, at \*5 (S.D.N.Y. Jan. 25, 2002)); *see also Gay v. Saul*, 2020 WL 1158727, at \*7 (N.D. Ohio Mar. 10, 2020) ("An ALJ must 'consider' all of the available evidence, including a claimant's medical history, but there is no requirement that an ALJ recite every symptom, complaint, or notation included in every medical record in the transcript file." (citing 20 C.F.R. § 416.929(a)). Nevertheless, the written decision shows that the ALJ considered Plaintiff's alleged mental impairments, including her diagnosis for depression, and concluded that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas[.]" A.R. 105. Specifically, the ALJ determined Plaintiff had mild limitation in understanding, remembering, or applying information, mild limitation in her ability to concentrate, persist, or maintain pace, and no limitation in interacting with others or adapting and managing herself. *Id.* And, to the extent Plaintiff's mental impairments contribute to her physical pain, the ALJ considered Plaintiff's pain in determining the overall RFC. Plaintiff does not point to any medical evidence that her alleged mental impairments would prevent her from engaging in substantial gainful activity, as found by the ALJ. Thus, any *Stone* error with respect to Plaintiff's alleged mental impairments is harmless. Remand is not required because there is no evidence in the record that Plaintiff's mental health claims are

severe enough to prevent her from holding substantial gainful employment. *Taylor*, 706 F.3d at 603.

Second, Plaintiff argues that because Dr. Nwankwo and Judge Collins, the ALJ who heard Plaintiff's claim originally, both acknowledged that Plaintiff suffers from morbid obesity, the ALJ should have found that Plaintiff's morbid obesity is a severe impairment. Pl.'s Br. 16. But Plaintiff advances no argument as to how her morbid obesity affects her ability to work. Indeed, the ALJ acknowledged that there "is no indication that the claimant's obesity causes direct limitation of her ability to perform basic work activities," but nonetheless considered how her obesity "may have contributed to and affected her other impairments" in both his step two severity analysis and his RFC determination. A.R. 105.

Third, Plaintiff argues that her diabetes is uncontrolled and severe. Pl.'s Br. 17. But, in his severity determination, the ALJ notes that Plaintiff has "admitted to noncompliance with prescribed behavioral changes, going so far as to state that when she was compliant with such lifestyle changes, her blood sugar levels remain controlled." A.R. 104. The ALJ thus found that with greater compliance, Plaintiff could avoid diabetes-related symptoms such as dizziness and inability to focus. *Id.* An ALJ may rely upon the lack of treatment as an indication of nondisability. *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Plaintiff, pointing to a progress note by John Sadler, PhD, contends that Dr. Sadler "implicitly ties [Plaintiff's] noncompliance [with insulin treatment for diabetes] with her mental state[.]" Pl.'s Br. 17. But Plaintiff does not explain how this fact renders her diabetes severe, or

how it precludes the ALJ from considering noncompliance with treatment as an indication of nondisability.

Finally, Plaintiff states that the "[m]edical records substantiate [her] incontinence . . . [and] show[ she] suffers from stage 3 chronic kidney disease." *Id.* at 16. The record indeed reflects that (1) Plaintiff urinates frequently and (2) that she has suffered from kidney stones and "simple cysts" on her kidneys, but otherwise has had normal kidney ultrasounds. The Court notes, however, that at the administrative hearing Plaintiff blamed her frequent urination on a medication that helps alleviate her *leg swelling*, not on any sort of kidney disease. *See*, *e.g.*, A.R. 304. In fact, when asked at the administrative hearing to describe the impairments that affect her ability to work, Plaintiff did not mention any impairment related to her kidneys. Although the ALJ has a duty to develop facts fully and fairly, the duty "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). And, as discussed more fully below, the ALJ properly considered Plaintiff's frequent urination in accordance with the Second Remand Order.

For these reasons, Court finds Plaintiff has failed to demonstrate that the ALJ would have reached a different conclusion regarding Plaintiff's ability to work if he had applied the correct severity standard. Accordingly, the Court concludes that the ALJ's failure to apply the correct severity standard was a harmless error. If a *Stone* error is harmless, it is not reversible because "procedural perfection is

not required, and an adjudication of the Commissioner is not to be vacated unless a substantial right of the claimant has been adversely affected," for "the major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012) (brackets and internal quotation marks omitted) (citing *Mays*, 837 F.2d at 1364).

<u>II. The ALJ did not err with respect to the evaluation from<br>Dr. Wolski's office; and even if the ALJ did err, his error was harmless.</u>

 Plaintiff also argues that the ALJ implicitly rejected the medical source statement of Ed Wolski, MD, by failing to mention it at all, without considering the appropriate factors. The Court disagrees that the portion of the record to which Plaintiff refers constitutes a medical source statement. And, even if the portion of the record at issue is a medical source statement, the Court concludes that the ALJ was not required to evaluate the factors before rejecting it. The Regulations provide six factors for an ALJ to consider in determining the degree of weight to afford a medical source opinion. *See* 20 C.F.R. §§ 416.927(c), 404.1527(c); *Bentley v. Colvin*, 2015 WL 5836029, at *8 (N.D. Tex. Sept. 30, 2015). The factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion by medical signs and laboratory findings; (4) the consistency of the medical opinion with the record; (5) whether the medical opinion is one of a specialist or not; and (6) any other factors the claimant or others bring to the

Commissioner's attention. 20 C.F.R. §§ 416.927(c), 404.1527(c).[3] Generally, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, but where the ALJ rejects the *sole* relevant medical opinion before it, it must engage in a detailed analysis of the relevant factors. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam).

Plaintiff states that Dr. Wolski's medical source statement can be found in the Administrative Record at page 1092. At page 1092 is a "Functional Capacity Evaluation Summary" prepared on May 4, 2010 stating that Plaintiff can occasionally squat and bend, can never reach up, can occasionally lift/carry 12 pounds from the floor, can frequently lift/carry six pounds from the floor, and can consistently lift/carry two pounds from the floor. A.R. 1092. The provider who prepared the summary is Ismael Rodriguez, whose medical credentials are unknown. *See id.* It appears that the evaluation may have been conducted at Dr. Wolski's practice, *see id.* at 1093, but the summary nowhere contains Dr. Wolski's signature.[4] As it is unclear the medical credentials of Ismael Rodriguez, the Court

---

[3] Section 416.927(c) applies in cases where the claimant seeks supplemental security insurance, while § 404.1257(c) applies where the claimant seeks disability insurance benefits. *See* 20 C.F.R. § 404.1527(b), (c); 20 C.F.R. § 416.927(b), (c). The two provisions contain identical factors and require the same analysis. *See Bentley*, 2015 WL 5836029, at * 6.

[4] Even if Dr. Wolski did sign or otherwise adopt the summary, that would not change the analysis. *See Geraldine F. v. Saul*, 2020 WL 1539629, at *4 (N.D. Tex. Feb. 28, 2020) (noting that an acceptable medical source's co-signing the opinion of an "other source" does not affect the weight of the opinion), *adopted by* 2020 WL 1530743 (N.D. Tex. Mar. 30, 2020).

concludes the portion of the record to which Plaintiff points does not constitute a medical source statement. *See Thibodeaux v. Astrue,* 324 F. App'x 440, 445 (5th Cir. 2009) (per curiam) (holding that only acceptable medical sources can render medical opinions); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (noting that acceptable medical sources include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech pathologists).

Moreover, the Court concludes that the ALJ was not required to engage in an analysis of the regulatory factors with respect to the portion of the record at issue because, to the extent it was a medical source statement, it was not the *sole* medical source statement in the record. Indeed, the ALJ considered and afforded no weight to the opinions of at least four other treating physicians, A.R. 112, and considered and gave great weight to the opinions of two SAMCs, *id.* at 111. *See also Walker v. Colvin*, 2014 WL 12539258, at *8 (W.D. Tex. Jan. 28, 2014) (finding no *Newton* error where ALJ credited SAMC opinions over treating physician opinion because rejected treating physician opinion was not the sole medical opinion in the record). For these reasons, the Court concludes that the ALJ did not commit error by failing to consider the portion of the record containing an evaluation by Ismael Rodriguez.

To the extent the ALJ's treatment of Ismael Rodriguez's evaluation could be considered error, it was harmless. The Functional Capacity Evaluation Summary completed by Ismael Rodriguez indicates that Plaintiff was capable of satisfying the physical demands of sedentary work. A.R. 1092. Sedentary work involves

14

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as docket files and small tools. 20 C.F.R. § 404.1567(a). *See also* 20 C.F.R. § 416.967(a) (same). In sedentary jobs, walking and standing are required only occasionally. *Id.* The ALJ determined that Plaintiff was not disabled because she could return to her past relevant work as a customer service representative—a sedentary job. A.R. 113, 330; *see also* Dictionary of Occupational Titles § 241.367-014, 1991 WL 672252 (customer-complaint clerk). Ismael Rodriguez's assessment of Plaintiff's functional capacity is entirely consistent with the ALJ's ultimate conclusion.

### III. The ALJ did not err by considering Plaintiff's noncompliance with diabetes treatment in determining the severity of her diabetes.

Plaintiff argues the ALJ committed error by implicitly determining that Plaintiff's noncompliance with medical treatment for her diabetes precluded a finding of disability. Pl.'s Br. 24. It is Plaintiff's position that the ALJ was required to follow the procedure set forth in SSR 82-59 before finding Plaintiff not disabled based on her failure to comply with medical treatment. *Id.* In particular, Plaintiff contends that before a determination of noncompliance is made, the claimant must be informed of the effect of noncompliance on his or her eligibility for benefits and be afforded an opportunity to undergo the prescribed treatment or show justifiable cause for failing to do so. *Id.* (citing SSR 82-59).

The Court assumes without deciding that it is error for an ALJ to find a claimant "not disabled" based solely on her noncompliance with prescribed

medical treatment. *See*, *e.g.*, *Lindsey v. Astrue*, 2011 WL 817173, at *8 (N.D. Tex. Mar. 9, 2011) (finding error where the ALJ relied "almost exclusively" on noncompliance with prescribed medical treatment and substance abuse in determining RFC). Nonetheless, the ALJ did not commit error here because the ALJ did not find Plaintiff not disabled based exclusively on her noncompliance with medical treatment. Rather, the ALJ cited Plaintiff's refusal to make certain prescribed lifestyle changes as a *factor* in determining the severity of Plaintiff's diabetes. A.R. 104. The ALJ further notes that Plaintiff states that her blood sugar levels remain controlled when she does adhere to the prescribed lifestyle changes. *Id.*

Indeed, Plaintiff concedes that "[t]he ALJ never explicitly rules that Plaintiff's noncompliance with medical treatment . . . justifies a finding of not disabled," that it is clear that "noncompliance was an *important factor* in the [d]ecision," and that the ALJ determined that Plaintiff is not disabled "*in part*[,] *at least*," because she did not comply with medical treatment. Pl.'s Br. 24-25 (emphasis added). An ALJ is entitled to consider noncompliance with prescribed medical treatment as a factor in the overall disability determination. *Aguero v. Saul*, 2020 WL 1493551, at *7 (N.D. Tex. Mar. 26, 2020); *Milligan v. Colvin*, 2014 WL 7028038, at *8 (N.D. Tex. Dec. 12, 2014). *See also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) ("it [is] within the discretion of the ALJ to discount [the plaintiff's] complaints of pain based on[, among other things,] her decision to forego certain medications."); *Johnson v. Comm'r of Soc. Sec. Admin.*, 2013 WL

16

632104, at *20-21 (N.D. Tex. Feb. 4, 2013) (distinguishing *Lindsey* and finding that an ALJ may consider noncompliance with prescribed medical treatment as a factor in assessing a claimant's credibility), *adopted sub nom. by Johnson v. Astrue*, 2013 WL 628561 (Feb. 20, 2013).

The Court concludes that the ALJ committed no error in considering Plaintiff's noncompliance with prescribed medical treatment as a factor in determining the severity of Plaintiff's impairments.

### IV. The ALJ complied with the Appeals Council's mandate to consider the effects of Plaintiff's medications on her ability to work.

Plaintiff also contends that the ALJ erred by failing to follow the Appeals Council's mandate to consider Plaintiff's medication side effects. Pl.'s Br. 25. Under the mandate rule, an ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). The Court assumes without deciding that an ALJ's refusal to follow a remand order is error. *Compare Henderson v. Colvin*, 520 F. App'x 268, 273 (5th Cir. 2013) (per curiam) ("[A]lthough [the plaintiff] cites some case law for the proposition that failure to comply with an Appeals Council order constitutes reversible error, none is mandatory authority."), *with Rymer v. Colvin*, 2013 WL 6869088, at *4 (N.D. Tex. Dec. 30, 2013) (reversing and remanding on sole ground that the ALJ did not follow a remand order). In any event, when an ALJ fails to follow a remand order, remand is warranted only where the ALJ's decision fails to apply the proper legal

standard or the decision is not supported by substantial evidence. *Henderson*, 520 F. App'x at 273; *Payne v. Colvin*, 2016 WL 5661647, at *8 n.6 (N.D. Tex. Sept. 28, 2016).

Here, the ALJ complied with the Second Remand Order, the relevant remand order for this appeal, and there is no error. In the Second Remand Order, the Appeals Council recognized that the prior hearing decision did not "reflect consideration of the side effects of the claimant's course of prescribed treatment, *in particular, the claimant's blood pressure medications*," which cause her to take frequent restroom breaks A.R. 617 (emphasis added). It further admonished that the prior decision did "not discuss or evaluate the side effects of the claimant's medications or her need for more frequent restroom breaks," and that such issue warranted further consideration. *Id.* Accordingly, the ALJ noted in his administrative decision that "although the claimant alleged increase in urinary frequency such that she had to use the bathroom every 15-to-30 minutes, the claimant herself expressly denied dysuria, urgency, hematuria, or any increase in urinary frequency on a number of occasions[.]" *Id.* at 108. The Court concludes that this finding by the ALJ satisfied his obligation under the remand order. Plaintiff—conceding that the ALJ adequately considered her frequent urination in accordance with the remand order—argues that because the ALJ did not consider the side effects of *all* Plaintiff's medications, he committed error. *See* Pl.'s Br. 26; *see also* Reply 1 (ECF No. 19) ("The ALJ arguably considers the issue of urinary frequency").

The Court disagrees with Plaintiff that the Second Remand Order should be interpreted to require the ALJ to consider *all* medication side effects. Indeed, the Appeals Council explicitly cited Plaintiff's frequent need to use the restroom as the particular medication side effect of concern. And the ALJ satisfied the Second Remand Order's mandate to consider such a side effect by discussing Plaintiff's frequent urination and its effect on her ability to work. To hold that the Second Remand Order required the ALJ to consider the side effects of *all* Plaintiff's medications would interpret it too broadly.[5] For this reason, the ALJ did not err with respect to the mandates of the Second Remand Order.

Even if the ALJ erred, however, Plaintiff failed to show the error was not harmless. *Jarrett v. Colvin*, 2014 WL 1281293, at *13 (N.D. Tex. Mar. 31, 2014) (applying harmless error analysis to the ALJ's failure to properly evaluate the side effects of medication). She has not shown that any of the alleged side effects prevent her from being able to return to work as a customer service representative.

### V. The ALJ has not committed a *Ripley* error, and the RFC is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's determination that she has the RFC to stand and/or walk up to two hours per eight-hour workday is not reflected in the opinion of any SAMC or treating doctor, indicating that the ALJ arrived at such an RFC by engaging in his own analysis of the medical evidence in violation of

---

[5] Plaintiff also states in passing that the Second Remand Order "specifically notes as an issue to be decided on remand, the effects of [Plaintiff's] depression on her RFC." Pl.'s Br. 16. This is inaccurate. *See* A.R. 617-18.

*Ripley v. Chater*. Accordingly, Plaintiff contends that the RFC is not supported by substantial evidence.

The ALJ has not committed an error with respect to his finding that Plaintiff can stand and/or walk two hours per eight-hour workday. The Court assumes without deciding that it would be error under *Ripley* for the ALJ to conclude that Plaintiff could stand and/or walk two hours per eight-hour workday without a medical opinion in the record to that effect. Nonetheless, no *Ripley* error has occurred. The opinions of SAMCs Dr. Ward and Dr. Durfor find that Plaintiff can stand and/or walk at least two hours per eight-hour workday.[6]  A.R. 111, 1330. An ALJ may meet the requirements under *Ripley* by relying on an SAMC's findings. *Coffelt v. Berryhill*, 2017 WL 6508993, at *4 (N.D. Tex. Nov. 1, 2017), *adopted by* 2017 WL 6498009 (N.D. Tex. Dec. 19, 2017); *see also Young v. Berryhill*, 2017 WL 946323, at *12 (N.D. Tex. Feb. 13, 2017) ("Because the ALJ relied on the medical opinions of [the SAMCs] to determine Plaintiff's limitations, he did not independently decide the effects of Plaintiff's impairments[.]"), *adopted by* 2017 WL 931228 (N.D. Tex. Mar. 9, 2017).

---

[6] Plaintiff posits that the ALJ "mistakenly states that Dr. Ward and Dr. Durfor conclude that [Plaintiff] can stand and walk 2 of 8 hours" when their opinion actually states that Plaintiff "can stand and walk 4 of 8 hours." Pl.'s Br. 11.  Dr. Ward's opinion—which Dr. Durfor affirms—clearly indicates that Plaintiff can stand and/or walk *at least* two hours, but not up to six hours, in an eight-hour workday. A.R. 1330 (emphasis added). In any event, the SAMCs' collective opinion supports the RFC that Plaintiff can stand and/or walk two hours per eight-hour workday.

Nevertheless, the Court finds that the ALJ's RFC is supported by substantial evidence. "It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor*, 706 F.3d at 603). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Id.* (brackets in original) (quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (per curiam)). "If supported by substantial evidence, the Commissioner's findings are deemed conclusive, and the court must accept them." *Jones*, 851 F. Supp. 2d at 1015 (citing *Richardson,* 402 U.S. at 390). Substantial evidence in this context "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted).

Here, substantial evidence supports Plaintiff's RFC. As stated above, the ALJ found that Plaintiff has the RFC to perform light work, except that she can "stand and/or walk for up to [two] hours total per [eight]-hour workday," "cannot [c]limb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs," "can occasionally balance, stoop, kneel, and crouch," and "can perform only occasional overhead reaching with the dominant upper extremity." A.R. 107. In making his RFC determination, the ALJ relied on objective medical evidence, opinion evidence, and Plaintiff's own testimony and functional reports. In particular, the ALJ gave the opinion of SAMCs Dr. Durfor and Dr. Ward "great weight"; they found that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds;

stand/and or walk for up to two hours in an eight-hour workday; can sit up for six hours in in eight-hour workday; can never climb ladders, ropes, or scaffolds; can only occasionally reach overhead with her right arm; and can balance, stoop, kneel, crouch, and crawl. *Id.* at 111, 1330-32. The RFC mirrors these SAMC findings.

But the ALJ did not base his RFC determination on Dr. Ward's and Dr. Durfor's opinion alone. The ALJ's RFC assessment also considered objective physical examinations of record which revealed, among other things, (1) normal musculoskeletal function; (2) "generally mild findings of disorder that would not be expected to cause symptoms" in Plaintiff's right knee; and (3) normal strength in Plaintiff's extremities. *Id.* at 108. Moreover, the ALJ relied on Plaintiff's own most recent functional report and found that she reported partaking in many activities of daily living that are inconsistent with her alleged symptoms. *Id.* For example, the ALJ cited Plaintiff's statement in her functional report that she is able to, and typically does, prepare her own simple meals daily; perform household chores such as laundry, dishes, and light cleaning; leave home two to four days per week, including alone; drive and ride in a car; and handle money without issue. *Id.* at 108-09, 1028-31. The Court concludes that these pieces of evidence from the record that the ALJ relied upon in reaching the RFC constitute "more than a mere scintilla" of evidence because a reasonable mind would accept them as adequate to support the RFC determination. *Richardson*, 402 U.S. at 401.

The ALJ did not commit a *Ripley* error, and the RFC determination is supported by substantial evidence.

## Conclusion

For the foregoing reasons, the hearing decision of the ALJ is AFFIRMED in all respects.

**SO ORDERED**.

May 20, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE